[No. 17800.  *En Banc.*  April 1, 1924.]

## R. B. HAYES, *Respondent,* v. AUTOMOBILE INSURANCE EXCHANGE, *Appellant.*[1]

INSURANCE (72)—AVOIDANCE OF POLICY—APPLICATION—BREACH OF WARRANTY—INTENT TO DECEIVE—KNOWLEDGE OF APPLICANT. Where untrue statements were made in an application for automobile insurance and included in warranties in the policy, the insured cannot show that he had no intent to deceive, within the meaning of Rem. Comp. Stat., § 7078, by proof that he accepted the policy without reading it and had no knowledge of the statements, since he is charged with the duty of doing so, and is bound thereby (PEMBERTON, MITCHELL, HOLCOMB, and TOLMAN, JJ., dissenting).

Appeal from a judgment of the superior court for King county, Davidson, J., entered October 4, 1922, upon the verdict of a jury rendered in favor of the plaintiff, in an action on an automobile insurance policy. Reversed.

*Van Dyke & Thomas,* for appellant.

*Tucker & Hyland* and *Ford Q. Elvidge,* for respondent.

ON REHEARING.

PER CURIAM.—Upon re-argument of this case (*Hayes v. Automobile Insurance Exchange,* 126 Wash. 487, 218 Pac. 252), before the court *En Banc,* it is vigorously urged by the respondent that he should be allowed to submit to the jury the question of his lack of intent to deceive, for the reason that as a matter of fact, he never read his policy and therefore could have had no such intent. The answer to this argument is that, as stated in the Department's opinion, whether he read the policy or not is immaterial, for the law charges him with the duty of reading it.

Justice Holmes, of the United States supreme court, in *Lumber Underwriters v. Rife,* 237 U. S. 605, said,

[1]Reported in 224 Pac. 594.

"no rational theory of contract can be made that does not hold the assured to know the contents of the instrument to which he seeks to hold the other party."

The same doctrine is announced by the supreme court of Missouri in *Modern Woodmen of America v. Angle,* 127 Mo. App. 94, 104 S. W. 297:

"Now it is well established in the law of insurance that, when the agent has written down untrue answers to such questions, even though it be done without the knowledge of the insured, and the insured is furnished a copy of the application containing such untrue answers annexed to the policy, he is afterwards estopped from denying knowledge thereof. The doctrine, of course, proceeds upon the theory that it is the duty of the insured to use reasonable diligence in discovering the contents of the contract, and, it is said, upon discovering the same, it becomes his duty to notify the company of such fraud perpetrated upon both himself and the insurer. At any rate, if he held the policy, referring in apt terms to the warranties contained in the application annexed, for a reasonable time, he is conclusively presumed to know the contents of the contract and the untruthful answers plainly written in the application, and is thereby estopped to assert that he had no knowledge of the subject."

To the like effect the supreme court of Iowa, in *Moore v. State Ins. Co.,* 72 Iowa 414, 34 N. W. 183, said:

"The policy is a unilateral contract, and its acceptance by plaintiff operates as an assent to the conditions intended to bind him. These conditions are as obligatory upon him as though he had signed the policy."

See, also, *Fidelity & Casualty Co. v. Fresno Flume & Irrigation Co.,* 161 Cal. 466, 119 Pac. 646, and 32 C. J. 1129.

The result, therefore, is that the respondent is charged in law with having accepted and read a policy

containing warranties which he knew at the time to be untrue, and that he is thereby estopped from asserting that, in the application, the answers which were afterwards embodied in the policy itself as warranties were written in by an agent of the company without his knowledge. The manner in which the application was made might relieve the respondent upon the theory that false statements contained in it were not made with intent to deceive, but that the policy itself was accepted by the respondent with knowledge of false warranties is another matter, for he is in law charged with knowing them and he cannot escape responsibility by saying merely that he did not read them.

Whether the application was filled out by the insurance company's agent becomes immaterial, for the respondent knew that the statements made therein were not based upon any facts detailed by him, and when he accepted the policy and is charged with having read it, he then, in legal effect, made for the first time the false statements with knowledge of their falsity, and the fact that they appeared there as a result of the agent's failure to inquire the facts of him does not make them any the less his own misstatements.

The case falls squarely within the rule announced in *Day v. St. Paul Fire & Marine Ins. Co.,* 111 Wash. 49, 189 Pac. 95, for here, as there, the assured accepted a policy knowing that it contained false warranties, and here, as there, his effort to take advantage of § 7078, Rem. Comp. Stat. [P. C. § 2941], went only to the extent of an assertion that he had actually no intention to deceive; in the *Day* case the testimony by the assured being that he did not intend to deceive, and here merely that he did not read the policy. Section 7078, by its terms, relieves the assured from the effect of false statements made only in "the negotiations of a contract of policy of insurance," and there is consider-

able question whether that section applies to false representations or warranties made in the policy itself; but assuming that it applies to the policy itself, still the rule which we have announced is applicable.

The decision of this case is not in conflict with prior decisions relating to this same subject-matter, for in all of them in which recovery upon a policy has been permitted there was positive proof of facts and circumstances from which the triers of the fact could rightfully determine that the assured had actually no intent to deceive; either that the insurance company knew the real condition of affairs, or that the assured, through a legitimate oversight, or for some reason of that nature, had neglected to state the facts as they really existed. But here the assured made no such explanation and his reason for asserting that he had no intention to deceive is that he had never read the policy. This amounts to no more than a claim that he is not bound by a policy which he did not read, and which, as we have shown, is not the rule of law applicable to such contracts.

The judgment is therefore reversed and the action dismissed.

PEMBERTON, J. (dissenting)—I dissent. In the case of *Eaton v. National Casualty Co.,* 122 Wash. 477, 210 Pac. 779, the application provided for answers to the questions as to whether or not the insured had ever received medical or surgical attention, and were answered in the negative. The insured told the soliciting agent that he had previously sustained an injury and had spent a number of weeks in a hospital. He claimed that he had made truthful answers to these questions and if the answers were improperly written into the application it was the fault of the soliciting agent. It was also claimed that the insured, "having received

and read and examined the policy containing a copy of his application, was therefore informed of the erroneous answers therein recorded in response to questions touching his previous disability, and that he, having failed to inform the company that the application was erroneous in those respects, must be held to have ratified the acts of the agent in improperly recording the answers.'' We supported the recovery upon that policy under Rem. Comp. Stat., § 7078 [P. C. § 2941], providing that no misrepresentation of warranty in negotiations for a contract of insurance shall be deemed material and defeat the policy unless it was made with intent to deceive. We approved the rule laid down in *Turner v. American Casualty Co.*, 69 Wash. 154, 124 Pac. 486, ''that a policy will not be held void nor the warranty clause in a policy held to have been breached for acts known to the agent before the application for the policy was signed, where the insured fully and truthfully related the facts to the solicitor and false answers were written in the application by the agent.'' *Brigham v. Mutual Life Ins. Co.*, 95 Wash. 196, 163 Pac. 380; *Quinn v. Mutual Life Ins. Co.*, 91 Wash. 543, 158 Pac. 82; *Askey v. New York Life Ins. Co.*, 102 Wash. 27, 172 Pac. 887, L. R. A. 1918F 267; *Day v. St. Paul Fire & Marine Ins. Co.*, 111 Wash. 49, 189 Pac. 95.

The automobile of respondent Hays was in the garage for repairs as the result of an automobile accident. It was necessary to procure a policy of insurance to secure an indebtedness upon the automobile held by the bank before he could remove the car from the garage. Respondent went to the insurance solicitor and made truthful statements to all the questions asked. The amount of insurance premium was agreed upon, the agent wrote a check, respondent signed it, and also, at the request of the agent, signed a blank

application.  The policy was issued and placed in a sealed envelope, delivered to the bank and not seen by the assured until after the fire in question.  Thereafter it was discovered that the agent, without the knowledge of the insured, had written false statements in the application.  Certainly, if the insured in the *Eaton* case, *supra,* could recover when he knowingly signed the application containing false statements upon the advice of the agent and thereafter retained the policy in his possession containing the false answers, there is no sufficient reason given why a recovery should not be allowed in this case.  The insured, at the request of the agent, signed the application in blank, had no knowledge of the false statements, and did not retain the possession of the policy.  The question of intent to deceive was a fact for the jury.

The rule relied upon by the majority was under consideration in the case of *Eaton v. National Casualty Co., supra,* and while it was recognized as the law of some of the states, we declared that it was not the law of this state, saying:

"So the rule is not the same here as in other states from which authorities are cited by appellant.  . . . That is not the rule here, but is as stated in the cases heretofore cited from this court."

The judgment of the trial court should be affirmed.

MITCHELL, HOLCOMB, and TOLMAN, JJ., concur with PEMBERTON, J.